IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY,<br>Plaintiff,<br><br>vs.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br>Defendant. | **COMPLAINT** |

Plaintiff Starr Indemnity & Liability Company ("Starr"), by and through its undersigned counsel, hereby alleges and says the following for its Complaint against the Defendant Hartford Casualty Insurance Company ("Hartford"):

## NATURE OF THE ACTION

1. This is a civil action for a declaratory judgment, contribution, and subrogation arising out of Hartford's wrongful denial of its obligation to pay its $5,000,000.00 per project aggregate limit to indemnify Pike Engineering, LLC ("Pike Engineering") against certain claims brought by Mary Emerson Zwack, by and through her Guardian ad Litem, Jeffrey R. Monroe, Mary Lynn Zwack, and Paul Joseph Zwack, against Pike Engineering, in a civil action filed in the North Carolina General Court of Justice, Superior Court Division, for of Orange County, case number 23CVS000570-670 ("the Underlying Action"), prior to any indemnity payment by Starr.

## PARTIES

2. Starr is a Texas insurance company authorized to conduct insurance business in the State of North Carolina. Starr's principal place of business is in New York, New York.

3. Upon information and belief, Hartford is an Indiana corporation with a principal place of business at One Hartford Plaza, Hartford, Connecticut 06155. Hartford may be served through its Registered Agent in Indiana, CT Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204, or through duly authorized individuals at its principal place of business.

## JURISDICTION AND VENUE

4. This is an action between citizens of different states, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs, such that this Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. § 1332.

5. This Court has personal jurisdiction over Hartford based on its presence within the jurisdiction of this Court and the fact that Hartford, at all relevant times, was authorized to conduct insurance business in North Carolina and contracted to insure persons, property and/or risks located within North Carolina, including but not limited to the policy of insurance at issue in this action.

6. An actual controversy exists between Starr and Hartford concerning the amount of Hartford's indemnity obligation to the parties' mutual insured, Pike Engineering, in the Underlying Action.

7. Venue is proper in this Court because this matter involves an insurance coverage dispute regarding the claims asserted against Pike Engineering under insurance policies that were issued to it at its office in this judicial district, the incident at issue in the Underlying Action occurred in this judicial district, and the Underlying Action was filed and disposed in this judicial district.

## FACTUAL ALLEGATIONS

8. Mary Emerson Zwack, by and through her Guardian ad Litem, Jeffrey R. Monroe, Mary Lynn Zwack, and Paul Joseph Zwack (collectively "the Underlying Plaintiffs"), filed the Underlying Action against Duke Energy Carolinas, LLC ("Duke Energy") and Pike Engineering for injuries Mary Emerson Zwack sustained in an accident on or about December 31, 2021. A true and correct copy of the Second Amended Complaint filed in the Underlying Action is attached hereto as **Exhibit 1**[1].

9. The Underlying Action arises out of a motor vehicle / pedestrian collision that occurred at a crosswalk on or about December 31, 2021, at approximately 5:36 PM. Mary Emerson Zwack was struck by a Volvo SUV while crossing N. Estes Drive in Chapel Hill, North Carolina.

10. The Underlying Action alleges that Duke Energy is responsible for maintaining the streetlights mounted on Pole No. 1AGJ44 and 1AGJ45[2] (the "Streetlights") on N. Estes Drive in the vicinity of the relevant crosswalk and that Duke Energy was aware that the Streetlights were not functioning, were not functioning properly and/or were failing.

11. Duke Energy and Pike Electric, LLC ("Pike Electric") entered into a Master Agreement for Transmission and Distribution Services on or about January 27, 2014, which agreement was subsequently amended (the "Master Agreement"). The Master Agreement provides that Pike Electric, as Contractor (including Pike Electric's Subcontractor, Pike Engineering) "shall perform the Services as specified by Duke Energy in a Purchase Order issued to Contractor

---

[1] The Second Amended Complaint is dated December 30, 2024, and was filed as an exhibit to Plaintiffs' Motion for Leave to Amend Complaint filed on that same date. On March 14, 2025, an Order was entered granting Plaintiffs' Motion for Leave to Amend Complaint and permitting Plaintiffs to file the Second Amended Complaint. Upon information and belief, the Second Amended Complaint was not subsequently filed as a separate, stand-alone document. Approximately one month later, on April 14, 2025, a Motion for Approval of Minor Settlement was filed, and a Voluntary Dismissal was filed on June 5, 2025, disposing of the Underlying Action.

[2] The Second Amended Complaint refers to the second pole as "1AGJ45", "AAGJ45", and "1AGJ4", although, upon information and belief, the correct name is "1AGJ45".

pursuant to this Agreement … ." (Hereinafter, Pike Engineering and Pike Electric are collectively referred to as "Pike"). The Master Agreement further provides that Pike "shall provide the Services at one or more of the Sites identified in the applicable Purchase Order and at such other locations as mutually agreed to in writing by the Parties." The Master Agreement defines "Site" as "the physical location where the Contractor shall perform the Services as identified in the Agreement and Purchase Order."

12. Duke Energy issued Work Order #41855207 to Pike on or about August 3, 2021, pursuant to the Master Agreement, which work order directs Pike to fix the Streetlights (the "Work Order").

13. The Underlying Action alleges that the Streetlights remained inoperative as of the date of the accident and sought damages from Pike Engineering based on its alleged acts and/or omissions in failing to fix the Streetlights.

14. Pike is insured by Hartford, Starr, and other insurers. As more fully discussed below, Hartford issued an excess liability policy that must be fully exhausted before the insurance policy Starr issued applies to any claims against Pike.

15. On or about May 18, 2025, the parties to the Underlying Action reached a confidential settlement ("the Settlement"). The terms of the settlement are confidential but are known to Hartford and Starr.

16. In connection with the Settlement, Starr demanded that Hartford contribute the full amount of Hartford's Excess Policy "per project" aggregate limit towards the Settlement. Hartford refused, taking the position that the "per project" limit was inapplicable to the Underlying Action and that the Hartford Excess Policy's "general aggregate" limit applied. Hartford further asserted

that the general aggregate limit had been exhausted by the payment of other claims such that it had no obligation to fund any portion of the Settlement of the Underlying Action.

17. As a result of Hartford's incorrect interpretation of its own Excess Policy and its unjustified refusal and failure to fund any portion of the Settlement in the Underlying Action, Starr was forced to pay more than its fair share of the Settlement. In so doing, Starr was not acting as a mere volunteer but was instead acting in the good faith belief that it had an interest to protect. Starr now seeks to recover the excess funds it paid from Hartford.

**The Insurance Policies Issued to Pike**

18. Hartford Fire Insurance issued commercial auto insurance policy number 30 EAS QU3313 to Pike Holdings, LLC and other named insureds for the policy period of October 1, 2021, to October 1, 2022 (the "Hartford Auto Policy"). That policy has a limit of $1,000,000.00 for Each Accident subject to an Each Accident Retention of $1,000,000.00.

19. Twin City Fire Insurance Company issued commercial general liability insurance policy 30 ECS QU3312 to Pike Enterprises LLC for the policy period of October 1, 2021, to October 1, 2022 (the "Twin City CGL Policy"). That policy has a limit of $1,000,000.00 for each occurrence subject to a $1,000,000.00 self-insured retention.

20. Hartford issued to Pike Group, Inc. excess liability policy number 30 RHU QU3316 (the "Hartford Excess Policy") for the policy period of October 1, 2021, to October 1, 2022. A true and accurate copy of the Hartford Excess Policy is attached hereto as **Exhibit 2**.

21. The Hartford Excess Policy has a $5,000,000.00 Per Project Aggregate Limit pursuant to its "Per Project – Amendment of Aggregate Limit Subject to Policy Maximum Aggregate Limit" endorsement (the "Endorsement").

22. Certain Underwriters at Lloyd's, London issued excess policy number B1262CJ0265321 to Pike Holdings, LLC and other Named Insureds (as set forth in the policy) (the "Lloyd's Excess Policy"). The Lloyd's Excess Policy provides $5,000,000.00 million in limits excess of the Hartford Excess Policy.

23. Starr issued to Pike Holdings, LLC commercial excess liability policy number 1000095406211 (the "Starr Policy") for the policy period of October 1, 2021, to October 1, 2022. A true and accurate copy of the Starr Policy is attached hereto as **Exhibit 3.**

24. The Starr Policy applies to losses covered by the Starr Policy in excess of the applicable limits of: (1) the Hartford Auto Policy or the Twin City CGL Policy; (2) the Hartford Excess Policy; and (3) and the Lloyd's Excess Policy.

25. Starr requested that Hartford confirm that its $5,000,000.00 per project limits of the Hartford Excess Policy are available, pursuant to the Endorsement, to indemnify Pike for the claims in the Underlying Action and to confirm that Hartford would make the $5,000,000.00 per project limit available before seeking any contribution from Starr under the Starr Policy. Hartford refused, wrongfully contending that the per project aggregate does not apply and that its applicable limits were already exhausted by payment of other claims.

**FIRST CLAIM FOR RELIEF**
**(Declaration that Hartford's Per Project Aggregate Limit Applies)**

26. Starr incorporates herein by reference the allegations contained throughout its Complaint as if fully set forth herein.

27. The Starr Policy applies to losses covered by the Starr Policy in excess of the "Underlying Insurance" listed in Item 5 of the Starr Policy's declarations:

**SECTION I. COVERAGE**

**A.** We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "Underlying Insurance" as shown in **ITEM 5.** of the Declarations, that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies and that takes place in the Coverage Territory. Except for the terms, definitions, conditions and exclusions of this Policy, the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies) shown in **ITEM 5.A.** of the Declarations.

***

**C.** The amount we will pay for the "Ultimate Net Loss" is limited as described in **SECTION II. LIMITS OF INSURANCE.**

***

**SECTION II. LIMITS OF INSURANCE**

***

**B.** The Limits of Insurance of this Policy will apply as follows:

**1.** This Policy applies only in excess of the "Underlying Insurance" scheduled in **ITEM 5.** of the Declarations.

28. The Starr Policy defines "underlying insurance" as "the Policy(ies)… identified in **ITEM 5.** of the Declarations":

**SECTION III. DEFINITIONS**

***

**B.** "Underlying Insurance"

"Underlying Insurance" means the Policy(ies) and/or self-insured retention identified in **ITEM 5.** of the Declarations. "Underlying Insurance" shall include:

29. Item 5. of the Starr Declarations refers to the Schedule of Underlying insurance:

**ITEM 5. "UNDERLYING INSURANCE"**

**A. First Underlying Insurance Policy(ies)**

| Insurer | Policy No. | Policy Period |
|---|---|---|
| See attached Schedule of Underlying Insurance | | |

**B. Additional Underlying Insurance Policy(ies)**

| Insurer | Policy No. | Policy Period |
|---|---|---|
| See attached Schedule of Underlying Insurance | | |

30. Starr's Schedule of Underlying Insurance lists the Hartford Excess Policy and the Lloyd's Excess Policy as an "underlying insurance policy":

## Excess Liability Policy
## Schedule of Underlying Insurance

| | | | |
|---|---|---|---|
| **Policy Number:** | 1000095406211 | **Effective Date:** | 10/01/2021 at 12:01 A.M. |
| **Named Insured:** | Pike Holdings, LLC | **Issuing Company:** | Starr Indemnity & Liability Company |

The Declarations, Schedule(s), and all terms and conditions complete this insurance Policy.

| **Type of Policy or Coverage and Insurer, Policy Number and Policy Period** | | **Limits of Insurance** |
|---|---|---|
| **A. First Underlying Insurance Policy(ies)** | | |
| Coverage: Umbrella Liability<br>Carrier: Hartford Fire Insurance Co.<br>Policy No.: 3ORHUQU3316<br>Policy Period: 10/01/2021 - 10/01/2022 | $5,000,000<br>$5,000,000<br>$5,000,000 | Each Occurrence Limit<br>Other Aggregate Limit<br>Products-Completed Operations Aggregate Limit |
| Coverage: Excess Liability<br>Carrier: Lloyd's<br>Policy No.: B1262CJ0265321<br>Policy Period: 10/01/2021 - 10/01/2022 | $5,000,000<br>$5,000,000<br>$5,000,000 | Each Occurrence Limit<br>Other Aggregate Limit<br>Products-Completed Operations Aggregate Limit |

31. The Starr Policy specifically provides that it will not apply "unless and until" Hartford and Lloyd's "ha[ve] paid or is obligated to pay the full amount of the limits" of both the Hartford Excess Policy and the Lloyd's Excess Policy:

**SECTION IV. CONDITIONS**

***

**M. When "Ultimate Net Loss" is Payable**

Coverage under this Policy will not apply unless and until the Insured or the Insured's "Underlying Insurance" has paid or is obligated to pay the full amount of the limits of the "Underlying Insurance" scheduled in **ITEM 5.** of the Declarations. If other insurance applies, coverage under this Policy will not apply until the other insurance has paid or is obligated to pay the full amount of its limit of insurance.

When the "Ultimate Net Loss" is determined, we will pay on behalf of the Insured the amount of "Ultimate Net Loss" to which this insurance applies.

32. The Endorsement to the Hartford Excess Policy provides that the "Per Project Aggregate Limit" set forth in its schedule "applies to each single 'project'" to which the Hartford Excess Policy applies:

**A. Limits Of Liability**

**Section III - Limits Of Liability** is deleted in its entirety and replaced with the following:

***

**3. Per Project Aggregate Limit of Liability (Except "Wildfire")**

Subject to the Policy Maximum Aggregate Limit, the Per Project Aggregate Limit set forth in Item **2.** of the Schedule above applies to each single "project" to which this insurance applies. The Per Project Aggregate Limit is the most we will pay for the sum of all damages to which this insurance applies in connection with that "project", in excess of "underlying insurance"; except however, the Per Project Aggregate Limit does not apply to damages that arise out of "wildfire" at or to a "project".

Payments made under a Per Project Aggregate Limit shall reduce the Policy Maximum Aggregate Limit and (the Per Project Aggregate Limit for that "project". Such payments shall not reduce the Per Project Aggregate Limit for any other "project" or the General Aggregate Limit.

33. The Endorsement defines "project" as a "jobsite."

**B.** For the purposes of this Endorsement, **Section V - Definitions** is amended by the addition of the following definitions:

**1.** "Project" means a jobsite including premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right of way of a railroad.

If a "project" has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed as the same project.

34. The term "jobsite" is not further defined in the Endorsement or in the Hartford Excess Policy.

35. However, the term "jobsite" is ordinarily understood as the area used to carry on a job. *See* www.Merriam-Webster.com, defining "jobsite" as "the area used in carrying on a job (as of construction)".[3]

36. The Streetlight's physical location is the Site as defined by the Master Agreement because it is the physical location where Pike was to perform the service of fixing the Streetlight pursuant to the Work Order.

37. Pike was engaged to work at a "jobsite" as that term is ordinarily understood and to perform a "project" as defined by the Endorsement to the Hartford Excess Policy.

38. Pike's work under the Work Order is a "project" as defined by the Endorsement.

39. The claims against Pike Engineering in the Underlying Action are in connection with a "project" because they involve Pike Engineering's work at a "jobsite."

40. Because the claims against Pike Engineering in the Underlying Action are in connection with and arise out of a "project" as defined by the Endorsement, the Hartford Excess Policy's $5,000,000.00 per project aggregate limit applies to the claims against Pike Engineering.

41. Hartford must pay the $5,000,000.00 per project aggregate limit of the Hartford Excess Policy before the Starr Policy applies to any of the claims against Pike Engineering in the Underlying Action and before Starr has any obligation under the Starr Policy to pay or contribute towards any settlement of, or judgment entered upon, the claims against Pike Engineering in the Underlying Action.

42. In contravention of the Hartford Excess Policy's language, Hartford has taken the position that its "per project" limit is inapplicable to the Underlying Action and that its obligations are limited by the Hartford Excess Policy's "general aggregate" limit of liability. As such, Hartford

[3] https://www.merriam-webster.com (September 1, 2026).

Contends that its "general aggregate" limit has been exhausted by the payment of other claims that have eroded, and ultimately exhausted, that "general aggregate" limit.

43. Starr has disputed Hartford's assertion that the Hartford Excess Policy is exhausted and has demanded that Hartford pay $5,000,000.00 million – the full amount of the "per project" aggregate limit available under the Hartford Excess Policy. Hartford has refused despite Starr's demand.

44. Accordingly, Starr seeks a judicial determination of its rights, and of Hartford's obligations, to pay for the indemnity costs associated with the Underlying Action.

45. An actual and justiciable controversy exists between the parties with respect to the extent of Hartford's indemnity obligations under the Hartford Excess Policy relating to the losses sustained.

46. The issuance of declaratory relief by this Court will resolve the existing controversy between the parties as to the terms and meaning of the Hartford Excess Policy and of Hartford's indemnity obligations in connection with the Underlying Action and the Settlement.

47. Starr is entitled to a declaration by this Court regarding application of the Hartford Excess Policy's limits to the Underlying Action and the extent of the parties' respective indemnity obligations in connection with the Underlying Action and the Settlement.

48. Starr seeks a declaration that the Hartford Excess Policy's "per project" aggregate limit applies such that Hartford must pay the full $5,000,000.00 million "per project" limit before Starr has any obligation under the Starr Policy in connection with the Underlying Action.

## **SECOND CLAIM FOR RELIEF**
**(Contribution)**

49. Starr incorporates herein by reference the allegations contained throughout its Complaint as if fully set forth herein.

50. The doctrine of equitable contribution permits this Court to apportion a loss between multiple insurers who cover the same risk, so that each pays its fair share. The general rule is that an insurer, such as Starr, who is compelled to pay or satisfy the whole or to bear more than its just share of a common burden or obligation upon which another insurer, such as Hartford, is equally liable or which is bound to discharge, is entitled to contribution against the other insurer to obtain payment of its respective share.

51. Starr, pursuant to the Starr Excess Policy, paid more than its pro rata share of the common liability in connection with the Settlement of the Underlying Action, and is therefore entitled to contribution from Hartford in the amount of $5,000,000.00 pursuant to the Hartford Excess Policy, plus Starr's reasonable attorneys' fees, court costs, and other expenses incurred because of Hartford's refusal to defend, pay, or contribute to the Settlement.

## THIRD CLAIM FOR RELIEF
**(Subrogation)**

52. Starr incorporates herein by reference the allegations contained throughout its Complaint as if fully set forth herein.

53. Subrogation permits an insurer, such as Starr, to step into the shoes of its insured to recover from a third-party who is liable for any amounts paid by the insurer to the insured. An insurer, such as Starr, may recover under a subrogation theory if it defends an insured with the good faith belief that it has an interest to protect, even if the insurer in fact has no duty to defend and no liability. The right of subrogation is not necessarily confined to those who are legally bound to make a payment but extends as well to persons who pay a debt in self-protection, since they might suffer loss if the obligation is not discharged.

54. Starr defended its insured, Pike, with the good faith belief that it had an interest to protect under the Starr Policy, in connection with the Underlying Action and the Settlement, or otherwise.

55. In so doing, Starr was not acting officiously or as a mere volunteer.

56. Starr, pursuant to the Starr Excess Policy, paid more than its pro rata share of the common liability in connection with the Settlement of the Underlying Action, and is therefore subrogated for its insured, Pike, as the real party in interest in this action, and is entitled to recover from Hartford in the amount of $5,000,000.00 pursuant to the Hartford Excess Policy, plus Starr's reasonable attorneys' fees, court costs, and other expenses incurred because of Hartford's refusal to defend, pay, or contribute to the Settlement.

## PRAYER FOR RELIEF

WHEREFORE, having asserted its Complaint, Starr prays the Court for the following relief:

1. That this Court enter a judgment declaring that the claims asserted against Pike Engineering in the Underlying Accident are in connection with a "Project" as defined by the Per Project Endorsement to the Hartford Excess Policy;

2. That this Court enter a judgment declaring that the $5,000,000.00 per project aggregate limit of the Hartford Excess Policy applies to the claims asserted against Pike Engineering in the Underlying Action, that Hartford is obligated to pay its full $5,000,000.00 per project aggregate limit before the Starr Policy applies to the claims against Pike Engineering in the Underlying Action, and that Hartford is obligated to pay its full $5,000,000.00 per project aggregate limit before Starr has any obligation under the Starr Policy to pay towards the Settlement of the claims asserted against Pike Engineering in the Underlying Action;

3. That a money judgment be entered in favor of Starr and against Hartford in the amount of $5,000,000.00 based upon Starr's claims for contribution and/or subrogation;

4. That a money judgment be entered in favor of Starr and against Hartford in an amount to be determined based upon Starr's other expenses incurred because of Hartford's refusal to defend its insured in the Underlying Action or to pay or contribute to the Settlement;

5. That the costs of this action be taxed against Hartford;

6. That Starr have and recover its reasonable attorneys' fees from Hartford; and

7. That the Court award Starr such other and further relief as justice requires.

This the 3rd day of September, 2026.

**Shumaker, Loop & Kendrick, LLP**

/s/ *Christian H. Staples*
Christian H. Staples, NC Bar No.: 40098
Fed Ct. ID 12118
101 South Tryon Street, Suite 2200
Charlotte, NC 28280
Phone: 704.945.2183
cstaples@shumaker.com
*Attorneys for Plaintiff*